# UNITED STATES DISTRICT COURT
for the
Southern District of Alabama

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>The contents of USAA Federal Savings Bank account ▮▮▮323-7 held in ▮▮▮▮▮▮▮ name | )<br>)<br>) Case No. MJ- 20-0065-B<br>)<br>) Filed under seal |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the    Western    District of    Texas    is subject to forfeiture to the United States of America under    18    U.S.C. § 981(b), 982(b)  *(describe the property)*:

The contents of USAA Federal Savings Bank account ▮▮▮323-7 held in ▮▮▮▮▮▮▮ name, as identified in the attached affidavit. A cashier's check shall be made payable to the United States Marshals Service and provided to FBI SA Lawrence Spurlin, 200 N. Royal Street, Mobile, AL 36602.

The application is based on these facts:

See attached affidavit

☒ Continued on the attached sheet.

*Applicant's signature*

Lawrence Spurlin, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 3, 2020

*Judge's signature*

City and state:  Mobile, Alabama

Sonja F. Bivins, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF WARRANTS TO SEIZE PROPERTY

I, Lawrence Spurlin, being duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

I am a Special Agent of the Federal Bureau of Investigation ("FBI"). I have been so employed since July 8, 2018. I have worked as an FBI Special Agent since July 2018. I am currently assigned to the Mobile field office, where I have been assigned to a white-collar crime squad since graduating from the Academy in November 2018. Among my duties as a Special Agent, I have participated in investigations of persons suspected of various violations of Title 18 of the United States Code, including wire fraud, money laundering, public corruption, bribery, bank fraud, and various other white collar crimes. I have been involved in several investigations targeting various fraudulent schemes that resulted in the issuance of seizure warrants, search warrants, and arrest warrants. Additionally, I have experience in investigating individuals who attempt to conceal proceeds of illegal acts, such as wire fraud, including through the use of multiple financial accounts and business entities to disguise the true owner of illicit funds they control through these accounts and entities. I have become knowledgeable about the methods and means by which money is laundered and the efforts of persons involved in such activities to avoid detection by law enforcement. As a special agent, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, undercover operations, and cooperating sources of information. Prior to joining the FBI, I was an agent for U.S. Customs and Border Protection, Air and Marine Operations for one year.

Pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f), I have prepared this affidavit to obtain warrants to seize the property described in Attachment A (the "Property"). There is probable cause to believe that Brandon Leross Bailey ("B. Bailey") has committed violations of 18 U.S.C. §§ 152, 1343, 1344, and 1956 at various times in the Southern District of Alabama, and there is probable

1

cause to seize the Property in connection with those violations. 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 provide for criminal forfeiture of proceeds relating to bankruptcy fraud and wire fraud. There is probable cause that the Property is property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. Moreover, 18 U.S.C. § 982(a)(2) provides for criminal forfeiture of proceeds relating to bank fraud. There is probable cause that the Property is property, real or personal, involved in such offense, or is traceable to such property. Finally, 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) authorize the forfeiture of property involved in a money laundering offense or any property traceable thereto.[1] The property involved in a money laundering offense includes the actual money laundered, commissions or fees paid to the launderer, and property used to facilitate the laundering offense. There is probable cause that B. Bailey committed money laundering, that the specified unlawful activity was bankruptcy fraud, wire fraud, and/or bank fraud, and that the Property was involved in money laundering as outlined in this affidavit.

This investigation is being conducted jointly by the FBI, the Social Security Administration Office of the Inspector General ("SSA-OIG"), and the United States Air Force Office of Special Investigations. Information obtained as a result of the investigative efforts of each agency is being shared with agents from the other agency and incorporated into my affidavit. The facts set forth in

---

[1] *See United States v. Puche*, 350 F.3d 1137, 1154 (11th Cir. 2003) (affirming money judgment equal to sum of commission paid to money launderer and value of untainted funds used to facilitate the offense); *see also United States v. Kennedy*, 201 F.3d 1324, 1326 (11th Cir. 2000) (equity defendant acquired when he used SUA proceeds to buy a residence is forfeitable as property involved in a violation of section 1957); *United States v. Seher*, 562 F.3d 1344, 1369 (11th Cir. 2009) (clean money in bank account into which jeweler deposited money from drug dealers as part of concealment money laundering offense was forfeitable because it gave the transaction a facade of legitimacy); *United States v. Huber*, 404 F.3d 1047, 1056, 1058 (8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money laundering case allows the Government to obtain a money judgment representing the value of all property 'involved in' the offense, including the money or other property being laundered [the corpus], and 'any property used to facilitate the laundering offense'"; the corpus includes untainted, commingled property).

this affidavit are based on my own personal knowledge, knowledge obtained from law enforcement officers, review of documents, financial records, and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein (including participants), attorneys involved in and evidence presented in civil suits pertinent to this investigation, and information gained through my training and experience and the training and experience of other law enforcement officers. I have not included every fact that other law enforcement agents and I have learned during my investigation. I have only included those facts that I believe are sufficient to establish probable cause that the violations set forth above occurred and are occurring and that the Property is forfeitable to the United States. All dates, times, amounts, and locations described below are my approximations.

## PROBABLE CAUSE

On July 14, 2010, a general court-martial composed of a military judge convicted B. Bailey, a former U.S. Air Force ("USAF") Major from Butler, Alabama, of four specifications of wrongful use of a controlled substance, five specifications of wrongful possession of controlled substances, one specification of wrongful appropriation, and three specifications of theft, in violation of Uniform Code of Military Justice Articles 112a and 121, 10 U.S.C. §§ 912a and 921. B. Bailey's sentence consisted of a dismissal and three months of confinement. Upon completion of the confinement in October 2010, B. Bailey was placed on appellate review leave. From that point onward, he was not entitled to pay and benefits and should no longer have received any pay or compensation from the USAF. On March 19, 2013, the USAF Court of Criminal Appeals affirmed B. Bailey's sentence and denied his appeal. Per a General Court-Martial order dated September 17, 2013, B. Bailey officially ceased to be a member of the Air Force on October 1, 2013. However, the Defense Finance and Accounting Service ("DFAS"), which provides payment services to the U.S.

Department of Defense, was not properly notified of B. Bailey's dismissal. Due to an administrative error, B. Bailey was kept on USAF payroll until March 2017. The error was caught in March 2017, and B. Bailey's payroll checks were retained by DFAS from mid-March 2017 to September 2017.

For October 2010 to mid-March 2017, the Air Force suffered an $818,918.36 loss as a result of the administrative error (base pay of $532,986.30; fly pay of $3,202.50; base allowance for housing of $226,568.77; base allowance for subsistence of $18,871.04; FICA employer match of $29,637.56; and Medicare employer match of $7,652.19). The paychecks were direct deposited into B. Bailey's checking account ███████ 880-3 at USAA Federal Savings Bank ("USAA"). These payments were traced to his bank statements for mid-August 2013 to mid-March 2017.

Ultimately, B. Bailey capitalized on the payroll mistake. He continued to receive unearned payroll checks from the Air Force from October 2010 to March 2017. His last DD-214 (Certificate of Release or Discharge from Active Duty) was updated on August 11, 2017 with an effective date of October 1, 2013. Despite no longer being in the Air Force, I know through my investigation that B. Bailey continued to access his MyPay account with the Air Force, where he could obtain erroneous documents such as annual W-2s, monthly payroll statements, a Department of Veterans Affairs Loan Guaranty Certificate, and a periodic Department of Defense Manpower Data Center Status Reports showing active duty. Additionally, B. Bailey continued to access healthcare at military treatment facilities after being placed on appellate review leave in October 2010. At various times after his general court-martial in July 2010 B. Bailey falsely represented his income and employment status to various entities for personal financial gain.

B. Bailey and ███████████ ("███████") are long-term cohabitants. They have shared common addresses beginning in 2003 and continuing to the present. ████████ changed his name

4

from ▮▮▮ to ▮▮▮ in April 2003. B. Bailey and ▮▮▮ have listed each other as beneficiaries of each other's bank accounts. Throughout B. Bailey's marriage to ▮▮▮ from 2005 to 2013, B. Bailey and ▮▮▮ shared addresses in common while ▮▮▮ shared addresses in common with B. Bailey's sister ▮▮▮.

On October 2, 2014, B. Bailey applied for a home construction loan through West Alabama Bank & Trust. The purpose of the loan was to build the house at ▮▮▮, Butler, Alabama 36904. On January 6, 2015, B. Bailey closed on the construction loan for $130,624.00 with West Alabama Bank. The loan account number was 881901. In his loan application, B. Bailey claimed to be a military officer making $82,234.80 in annual wages. B. Bailey's representations to the bank were fraudulent because he did not declare in his application that he in fact was dismissed from the Air Force on October 1, 2013 and that he was not in active status in 2014 or 2015. During this time period, B. Bailey should not have been receiving any wages from the USAF.

On September 4, 2015, B. Bailey applied for a Department of Veterans Affairs ("VA") home loan to refinance the construction loan for his residence at 1131 Bailey Road, Butler, Alabama 36904. The loan application was through West Alabama Bank. On September 20, 2015, B. Bailey signed a mortgage fraud warning document as part of his loan application. On November 18, 2015, B. Bailey used ▮▮▮@me.com during the loan application process to send proof of paychecks and employment with the Air Force to the bank's loan officer and misrepresented his military status. On December 18, 2015, B. Bailey closed on the loan for $153,000 with West Alabama Bank. B. Bailey fraudulently used his erroneous current service records to obtain the loan. In his mortgage loan application, he used his federal tax returns from 2014 and 2015 in which he claimed his Air Force income. B. Bailey's representations to the bank were fraudulent because he

did not declare in his application that he in fact was dismissed from the Air Force on October 1, 2013, that he was not in active status in 2015, and was not entitled to any wages from the USAF.

B. Bailey made numerous transfers to savings account ▆▆▆8330-4 in the name of ▆▆▆ ▆▆▆ ("▆▆▆") at USAA. There were three accounts for ▆▆▆ at USAA: checking, savings, and investment. They were opened using ▆▆▆ name and identifiers but listing B. Bailey's email address ▆▆▆@me.com. ▆▆▆ email associated with her West Alabama Bank account was ▆▆▆@me.com. Between December 2013 and June 2016, B. Bailey electronically transferred $113,916 from his USAA checking account ▆▆▆880-3 to ▆▆▆ USAA savings account ▆▆▆330-4. Numerous transfers occurred within a close timeframe and in similar dollar amounts of the USAF payroll deposits that B. Bailey received. For example, on March 13, 2014, DFAS deposited $4,147.27 into B. Bailey's USAA checking account ▆▆▆880-3. On that same day, B. Bailey transferred $4,148 from his USAA checking account ▆▆▆880-3 to ▆▆▆ USAA savings account ▆▆▆330-4.

Similar transactions occurred on April 1, 2014, May 6, 2014, and May 16, 2014, among other dates. In September and October 2017, B. Bailey made three transfers totaling $28,500 from his USAA savings account ▆▆▆1849-7 to ▆▆▆ USAA savings account ▆▆▆330-4. Between December 2013 and June 2016, transfers totaling $64,325.73 were made from ▆▆▆ savings account ▆▆▆330-4 to B. Bailey's checking account ▆▆▆880-3. Between January 2014 and November 2017, $140,320 from ▆▆▆ savings account ▆▆▆330-4 was used to purchase mutual funds in ▆▆▆ USAA investment account ▆▆▆4338.

Between August 2014 and July 2018, withdrawals were made from that investment account totaling $142,773.47 and distributed to ▆▆▆ USAA savings account ▆▆▆330-4 ($62,273.47), ▆▆▆ USAA checking account ▆▆▆7172-4 ($71,000), and B. Bailey's

USAA checking account ▇▇▇ 880-3 ($9,500). Of the $71,000 transferred to account ▇▇▇ 8330-4, $66,000 was paid in checks to B. Bailey's West Alabama Bank construction loan account 881901 and $5,000 was transferred to B. Bailey's USAA checking account ▇▇▇ 880-3. The only sources of funds for ▇▇▇ USAA accounts were B. Bailey's USAA checking and savings accounts. The only withdrawals or bills paid from ▇▇▇ USAA accounts were to B. Bailey's USAA checking account and his West Alabama Bank construction loan account.

Figure 1 shows the flow of money between B. Bailey's accounts and those accounts opened in J. Bailey's name.



*Figure 1*

On December 21, 2016, B. Bailey applied for a Visa credit card with Air Force Federal Credit Union. In the application, B. Bailey identified ▇▇▇ as his beneficiary. B. Bailey also gave income and employment information in his application, in which he falsely stated that he was

7

active military with the Air Force for over sixteen years and three months with a base salary of $7,449.30 per month. B. Bailey's representations to the credit union were fraudulent because he did not declare in his application that he in fact was dismissed from the Air Force on October 1, 2013 and that he was not in active status in 2016.

In continuing with his fraudulent course of conduct, on February 2, 2017 B. Bailey refinanced his 2015 Ford F150 pickup with Air Force Federal Credit Union. During the application process, B. Bailey used ███████@me.com to communicate with the credit union's loan officer. To prove his purported Air Force employment, B. Bailey sent the credit union a copy of his Department of Defense Manpower Data Center certificate to show that he was actively employed by the military as of February 11, 2017, when in fact he was not actively employed as of this date.

On February 26, 2019, B. Bailey filed for federal bankruptcy protection under Chapter 7. The bankruptcy was discharged on June 4, 2019. Among the claimed debtors were DFAS and TRICARE, the medical service provider for the Department of Defense. B. Bailey claimed filing status as single, and ███████ relationship, cohabitation, and income were not included in the bankruptcy filing. They had both been living at ███ ███████, Butler, Alabama since 2015. B. Bailey claimed in his bankruptcy petition that his debts were primarily consumer debts. Of the $950,992.62 in listed unsecured debts, B. Bailey claimed that $736,602.00 owed to DFAS was for an alleged overpayment by DFAS and $115,029.32 owed to Express Scripts was for an alleged overpayment by TRICARE. B. Bailey also claimed ownership of a 20-gauge shotgun and ammunition, which he cannot lawfully possess due to his dismissal at court-martial from the USAF. B. Bailey claimed to have only $1,500 in a USAA account.

Prior to filing bankruptcy, on November 15, 2018 a $2,440 check from Harley Simmons made out to B. Bailey was deposited into ▇▇▇ USAA checking account ▇▇▇ 847-0. On November 28, 2018, B. Bailey transferred $9,000 from his USAA checking account ▇▇▇ 880-3 to ▇▇▇ USAA checking account ▇▇▇ 847-0. On February 4, 2019, B. Bailey transferred $17,000 from his USAA checking account ▇▇▇ 880-3 to ▇▇▇ USAA checking account ▇▇▇ 847-0. The source of these funds was an early distribution from B. Bailey's USAA Roth IRA account ▇▇▇ 2935 in the amount of $34,699.62 to his USAA checking account ▇▇▇ 880-3 on November 27, 2018.

At the time of B. Bailey's bankruptcy filing, ▇▇▇ USAA checking account ▇▇▇ 847-0 had a balance of $23,295.78. Neither of these transactions were disclosed in the bankruptcy petition. B. Bailey did not list any food, utilities, insurance or medical expenses in his petition in Schedule J. B. Bailey also did not list any income contribution from ▇▇▇ as an unmarried partner, member of household or roommate in his Schedule I for food, utilities, insurance or medical or other expenses. B. Bailey's reported income was solely that from Social Security Disability Insurance ("SSDI") amounting to $1,881.60 per month. He did not report the $6,500 in 2018 income from Samford University or the $450 in monthly rental income ($5,400 annually) from the property he owned at ▇▇ ▇▇▇▇▇▇ ▇▇▇, Butler, Alabama 36904. ▇▇▇ received monthly income from SSDI ($1,673.00), VA disability compensation ($1,113.86), and a life insurance annuity ($397.50). B. Bailey signed the bankruptcy petition with the acknowledgement that all statements were true and correct under penalty of perjury and that making false statements or concealing assets was punishable by up to $250,000 in fines and/or imprisonment for up to 20 years, or both.

9

Between 2010 and 2020, ▮▮ received bank transfers to his USAA checking account ▮▮847-0 from B. Bailey's USAA checking account ▮▮880-3 totaling $189,920.47, from B. Bailey's USAA savings account ▮▮849-7 totaling $19,375.00, and from B. Bailey's USAA investment account 36901452181 totaling $4,278.66. Additionally, B. Bailey made payments from his USAA checking account ▮▮880-3 to ▮▮ USAA MasterCard ending in 8611 totaling $9,527.17.

Several of the transfers from B. Bailey to ▮▮ were approximately the same amount as B. Bailey's USAF pay. For example, on October 11, 2013, B. Bailey received a credit from DFAS in the amount of $4,118.79 to his USAA checking account ▮▮880-3. On October 15, 2013, B. Bailey transferred $4,118.79 from his USAA checking account ▮▮880-3 to ▮▮ USAA checking account ▮▮847-0. That same day, ▮▮ transferred $4,119.00 from his USAA checking account ▮▮847-0 to his USAA savings account ▮▮323-7. Between November 1, 2013 and December 13, 2013, four more transfers were made in dollar amounts of $4,000, $4,100, $4,119, and $4,119 from B. Bailey's checking account ▮▮880-3 to ▮▮ checking account ▮▮847-0 and from there to ▮▮ savings account ▮▮323-7. On December 23, 2013 and again on December 30, 2013, ▮▮ transferred $9,500 to B. Bailey's USAA checking account ▮▮880-3. B. Bailey then transferred those monies to ▮▮ USAA savings account ▮▮330-4. B. Bailey's primary source of income from October 1, 2010 and March 2017 was the USAF payroll deposit from DFAS into his USAA checking account ▮▮880-3. Additionally, B. Bailey began receiving SSDI benefits in June 2013 through direct deposit into his USAA checking account ▮▮880-3. ▮▮ made further transfers from his USAA checking account ▮▮847-0 to his USAA checking account ▮▮343-1.

10

Figure 2 depicts the flow of funds among B. Bailey's, ▮▮▮ and ▮ ▮▮▮ accounts.



*Figure 2*

B. Bailey had power of attorney for his mother, ▮▮▮▮, beginning on May 15, 2019 and his father, ▮▮▮▮▮▮ ▮ ("▮▮▮"), beginning on July 1, 2019. On July 1, 2019, ▮▮▮ updated his will naming B. Bailey as his sole inheritor. On July 11, 2019, B. Bailey exercised the powers of attorney for his parents to transfer deed of multiple properties owned by his parents to ▮▮▮ Bailey. The deed transfer was recorded at 11:36 a.m. on July 11, 2019 and stamped as filed at 1:12 p.m. on July 11, 2019.

B. Bailey's father, ▮▮▮▮ died at 12:39 p.m. on July 11, 2019. The deed states that ▮▮▮ paid $200,440 for the property. At the time of the deed transfer, at least one parcel, address ▮▮ ▮▮▮ ▮▮▮ Butler, Alabama 36904, had an outstanding mortgage balance of $19,037.27 with Naheola Credit Union, account ▮▮▮5000, under ▮▮▮▮ name. The balance was not paid off by

11

any mortgage, refinance, or probate. Records indicate that loan payments continued to be made by B. Bailey from his USAA Checking account ▇▇▇▇880-3 through February 2020. No accounts have been found for ▇▇▇▇ showing payments for property to either ▇▇▇ or ▇▇▇. No accounts for ▇▇▇ or ▇▇▇ have been found showing payments from ▇▇▇▇. The only mortgages found on the properties were the ones in place prior to the deed transfer. None of the mortgages were in ▇▇▇▇▇ name.

B. Bailey was a signatory on ▇▇▇▇ accounts at West Alabama Bank and was the only person to sign checks drawn on that account after the middle of May 2019. Several large deposits were made to the account in late July 2019, corresponding to amount from insurance checks resulting from a claim from a house fire at ▇▇▇ residence on July 10, 2019. The checks were made payable to ▇▇▇ estate. ▇▇▇ and ▇▇▇ divorced in 1989. Due to B. Bailey's bankruptcy filing on February 26, 2019, any estate or inheritance received by B. Bailey prior to August 24, 2019 would have been subject to clawback pursuant to the bankruptcy and should have been reported to the trustee of the bankruptcy. Of the $89,250 from the insurance claim that was deposited to ▇▇▇▇ West Alabama Bank account ▇1446, $60,000 was applied to ▇▇▇ West Alabama Bank loan on the property.

On August 1, 2019, B. Bailey wrote a check from ▇▇▇ West Alabama Bank checking account ▇1446 to ▇▇▇ in the amount of $5,000 which ▇▇▇ deposited to his USAA checking account ▇▇▇847-0. On August 8, 2019, B. Bailey wrote a check from ▇▇▇ West Alabama Bank checking account ▇1446 to ▇▇▇ in the amount of $9,000 which ▇▇▇ deposited to his USAA checking account ▇▇▇847-0. A cashier's check drawn on ▇ ▇▇▇ West Alabama Bank account ▇1446 for $13,995 was deposited to B. Bailey's USAA

checking account ███ 880-3 on December 13, 2019. On December 23, 2019, B. Bailey transferred $11,500 from his USAA checking account ███ 880-3 to his USAA savings account ███ 849-7.

On March 30, 2020, B. Bailey wrote a check to himself on ███ West Alabama Bank account ███ 1446 in the amount of $5,000 which he deposited to his USAA checking account ███ 880-3. That same day, B. Bailey transferred $5,000 from his USAA checking account ███ 880-3 to his USAA savings account ███ 849-7. On April 21, 2020, B. Bailey wrote a check to himself on ███ West Alabama Bank account ███ 1446 in the amount of $6,000, which he deposited to his USAA checking account ███ 880-3. On April 27, 2020, B. Bailey transferred $6,500 from his USAA checking account ███ 880-3 to his USAA savings account ███ 849-7. ███ died on October 27, 2019.

In March 2020, B. Bailey and ███ sold the property at ███ ███ ███. B. Bailey paid the outstanding principal balance of $140,503.89 to M&T Bank for B. Bailey's loan on ███ ███ ███ the outstanding principal balance of $73,049.67 to West Alabama Bank for ███ loan on ███ ███ ███, and received a check for $210,982.10 which he deposited to his USAA checking account ███ 880-3 on March 6, 2020. He further transferred various amounts from his USAA checking account ███ 880-3 to his USAA savings account ███ 849-7 on different dates: March 16, 2020 ($23,000); March 23, 2020 ($187,000); and March 26, 2020 ($10,000). On June 8, 2020, B. Bailey transferred $200,000 from his USAA savings account ███ 184-7 to his USAA checking account ███ 880-3.

On June 8, 2020, B. Bailey wrote a check from his USAA checking account ███ 880-3 to Charles Schwab and Company, Incorporated ("Charles Schwab") in the amount of $200,000. The funds were deposited to an investment account, ███ 4021, in B. Bailey's name. This investment

13

account is subject to changes in market value and earns dividends that originate from criminal proceeds. ▮ does not appear on any of the account paperwork. The funds in the account were used to buy money market, equities, exchange traded funds, and mutual funds.

Based on the foregoing information, it appears that the Property contains funds constituting or traceable to funds constituting proceeds of B. Bailey Bailey's violations of 18 U.S.C. §§ 152, 1343, and/or 1344. The Property contains proceeds traceable to funds that were involved in financial transactions in property derived from specified unlawful activity, namely, violations of 18 U.S.C. §§ 152, 1343, and/or 1344, where the transactions were designed in whole or in part to conceal and disguise the location, source, ownership, or control of the proceeds. As a result, such funds are subject to civil forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981 (a)(1)(C), and 984, and are subject to criminal forfeiture pursuant to 18 U.S.C §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461. The funds are subject to seizure in accordance with 21 U.S.C. § 853(f) as well as 18 U.S.C. §§ 981(b) and 982(b).

Furthermore, there is probable cause that a restraining order under 21 U.S.C. § 853(e) would be insufficient to assure that the funds the United States seeks to seize will be available for forfeiture. The offenses discussed in this affidavit involve sizeable transfers of funds from one account to another for the furtherance of criminal objectives. B. Bailey has consistently relied upon misleading documents and funds transfers to achieve criminal ends. In light of these facts and the speed with which electronic transfers of funds can be conducted, seizure of the USAA and Charles Schwab accounts – rather that their mere restraint – is appropriate for assuring that the funds will be available for forfeiture.

## CONCLUSION

Based on the forgoing, I request that the Court issue the proposed seizure warrant.

Respectfully submitted on July 31, 2020.

_____
Lawrence Spurlin
Special Agent
Federal Bureau of Investigation


THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(A) THIS 3rd
DAY OF ~~JULY~~ August 2020

_____
SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

15

# ATTACHMENT A
## Property to be seized

The items to be seized are all the funds in each of the following financial accounts:

| No. | Account Holder | Institution | Account # | Balance as of Date | Approximate Amount |
|---|---|---|---|---|---|
| 1 | Brandon Leross Bailey | USAA Federal Savings Bank | ▮880-3 | 6/30/20 | $2,464.55 |
| 2 | Brandon Leross Bailey | USAA Federal Savings Bank | ▮849-7 | 6/30/20 | $9,412.95 |
| 3 | ▮▮▮ | USAA Federal Savings Bank | ▮323-7 | 6/30/20 | $0.04 |
| 4 | ▮▮▮ | USAA Federal Savings Bank | ▮847-0 | 6/30/20 | $9,527.25 |
| 5 | ▮▮▮ | USAA Federal Savings Bank | ▮343-1 | 5/5/20 | $14.43 |
| 6 | Brandon Leross Bailey | Charles Schwab Corp. | ▮4021 | 6/30/20 | $201,064.86 |
| 7 | ▮▮ | West Alabama Bank and Trust | ▮1446 | 4/21/20 | $7,001.26 |
|   |   |   |   | **Total:** | **$229,485.34** |

1